724 So.2d 1044 (1998)
Johnny POOL, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-00972 COA
Court of Appeals of Mississippi.
December 18, 1998.
Anthony J. Buckley, Laurel, Attorney for Appellant.
*1045 Office of the Attorney General by Scott Stuart, Attorney for Appellee.
BEFORE THOMAS, P.J., KING, AND SOUTHWICK, JJ.
KING, J., for the Court:
¶ 1. Johnny Pool was convicted of submitting a fraudulent invoice to the Jones County Board of Education, in violation of Miss.Code Ann. § 97-7-10 (Rev.1994). He was sentenced to serve a term of one year, without the benefit of parole, in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Pool has appealed and assigned two points of error:
I. THE COURT ERRED IN NOT DIRECTING A VERDICT FOR THE DEFENDANT AT THE CONCLUSION OF THE STATE'S CASE AND AT THE CONCLUSION OF ALL THE EVIDENCE FOR THE FOLLOWING REASONS, AND THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
A. THE INVOICE UPON WHICH THE DEFENDANT'S CONVICTION IS BASED WAS NEVER PRESENTED TO THE SCHOOL BOARD OR ITS REPRESENTATIVES FOR PAYMENT, NOR INDEED WAS IT EVER PAID.
B. THE STATE TOTALLY FAILED TO MAKE OUT A PRIMA FACIE CASE OF FALSE PRETENSE OR INTENT TO FRAUD.
II. THE COURT ERRED IN GRANTING JURY INSTRUCTION S-5A.
¶ 2. On cross appeal, the State of Mississippi alleges that the circuit court committed reversible error by sentencing Pool to serve only one year. The State argues that because the circuit court determined Pool to be an habitual offender pursuant to Miss.Code Ann. § 99-19-81, he should have received a mandatory sentence of five years.
¶ 3. This Court finds that Pool's two assignments of error are without merit. On the State's cross-appeal, this Court finds that the trial court, when sentencing Pool, failed to fully articulate its proportionality analysis in accordance with Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) and Hoops v. State, 681 So.2d 521 (Miss.1996). Accordingly, this Court reverses the sentence imposed and remands this matter for an additional sentencing hearing and proper proportionality analysis.

FACTS
¶ 4. During the fall of 1994, the Jones County Board of Education contracted with Pool's Tree Service to perform activities such as tree branch trimming, tree cutting, and stump grinding. Pool completed job assignments on the campuses of two schools in the Jones County School District, Northeast Jones High School and West Jones High School.
¶ 5. Under the contract, Pool priced all completed work and submitted invoices to Denny Johnson, the school district's sixteenth section land manager, for approval. Johnson testified that he personally inspected each job site, signed the invoices and then returned them to Pool. Upon receiving Johnson's approval, Pool submitted the invoices to the Jones County Board of Education for payment.
¶ 6. From September 23, 1994 to November 15, 1994, Pool submitted five invoices for work performed on the West Jones High School campus. In the first four invoices, he billed for cutting 195 trees and grinding seven stumps. The school district paid for these services. In the last invoice dated November 15, 1994, Pool billed for cutting an additional 46 trees and grinding 46 stumps on the West Jones campus. Questioning whether Pool had actually performed this work, the school district refused to pay. The Jones County Board of Education initiated an investigation of Pool's activities.
¶ 7. On November 21, 1994, Scott Lewis, the business manager for the school district, and Joey Landrum, the purchasing agent, viewed the West Jones High School campus to determine the extent of work completed by Pool. Both men testified that they found a total of 70 stumps on this campus. Approximately eight wood chip piles were found *1046 indicating that only eight stumps had been ground.
¶ 8. Seven months later, Warren Emfinger, an investigator for the Public Integrity Division of the Mississippi Attorney General's Office, also viewed the West Jones campus. Emfinger testified that he found seven "soft" spots where sawdust from ground stumps had apparently scattered. He also testified that the number of stumps remaining or trees cut ranged from 209 to 278.
¶ 9. Pool was indicted on four counts of fraudulent activity. The jury convicted him of only one count. This count was based on the November 15, 1994 invoice. After determining that Pool was an habitual offender, the trial court sentenced him to twelve months without parole. Pool's motions for new trial and judgment notwithstanding the verdict having been denied, he now appeals his conviction and sentence. The State cross-appeals the trial court's sentencing.

ISSUES

I. THE COURT ERRED IN NOT DIRECTING A VERDICT FOR THE DEFENDANT AT THE CONCLUSION OF ALL THE EVIDENCE AND THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 10. Pool contends that the State failed to establish a prima facie case of submitting a fraudulent document to a governmental entity, and therefore his motion for directed verdict should have been granted. This Court finds no merit in Pool's contention.

Standard of Review
¶ 11. In appeals from an overruled motion for directed verdict and judgment notwithstanding the verdict, the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. McClain v. State, 625 So.2d 774, 778 (Miss.1993). The credible evidence consistent with guilt must be accepted as true. Id. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. Id. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Id.

Law
¶ 12. An individual, with intent to defraud the state or any department, agency, office, board, commission, county, municipality or other subdivision of state or local government, who knowingly and willfully falsifies, conceals or covers up by trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall, upon conviction, be punished by a fine of not more than Ten Thousand Dollars ($10,000.00) or by imprisonment for not more than five (5) years, or by both such fine and imprisonment. Miss.Code Ann. § 97-7-10.

Analysis
¶ 13. As prescribed by Miss.Code Ann. § 97-7-10 (as amended), count four of Pool's indictment charged him with knowingly seeking payment for services not performed. To support this charge, the State presented evidence to establish that Pool submitted the November 15, 1994 invoice, a false document, to Johnson for his approval and delivered it to the Jones County School District for payment.
¶ 14. In the November 15, 1994 invoice, Pool billed for grinding 46 stumps on the West Jones campus. The testimony of Lewis, Landrum, and Emfinger indicated that Pool did not grind 46 stumps. Lewis and Landrum testified that they found only eight stumps ground. Emfinger's testimony indicated that only seven stumps had been ground. The testimony of these State witnesses provided sufficient evidence which supported the State's assertion that Pool did not grind 46 stumps. A jury could find that *1047 this portion of the invoice was, therefore, false.
¶ 15. In the November 15, 1994 invoice, Pool also billed for cutting 46 trees. This Court notes that the State's evidence regarding the number of trees cut was unclear. The record reveals that the number of stumps[1] remaining on the West Jones campus differed considerably according to the testimony of Lewis, Landrum, and Emfinger. Lewis and Landrum stated that 70 stumps remained, indicating that only 70 trees had been cut. However, Emfinger testified that between 209 and 278 trees had been cut. This testimony did not sufficiently establish that 46 additional trees had not been cut.
¶ 16. Notwithstanding the State's failure to establish that 46 additional trees had not been cut, it was clearly established that 46 stumps had not been ground. Viewing the evidence in the light most favorable to the State and giving the State all favorable inferences that can be drawn from the evidence, McClain, 625 So.2d at 778, it was established that Pool attempted to defraud the Jones County Board of Education by the knowing delivery to it of an invoice which sought compensation for unperformed services. Under these facts, Pool was not entitled to a directed verdict.
¶ 17. Pool also argues that the verdict was against the overwhelming weight of the evidence.
¶ 18. "In determining whether or not a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial." Isaac v. State, 645 So.2d 903, 907 (Miss.1994).
¶ 19. The record clearly reveals that Pool created the November 15, 1994 invoice and then submitted it to a representative of the Jones County School District. Though the testimony was somewhat inconclusive regarding the number of trees that had been cut, several witnesses testified that less than 46 stumps had been ground. The testimony regarding the number of stumps ground was sufficient to establish that Pool created a false document. Accepting as true the evidence which supported the verdict, this Court does not find that the verdict was against the overwhelming weight of the evidence.

II. THE COURT ERRED IN GRANTING JURY INSTRUCTION S-5A.
¶ 20. Pool contends that State Instruction S-5A was improper because it failed to require the jury to find beyond a reasonable doubt that Pool had previously been paid for all stumps ground and trees cut.
¶ 21. Jury Instruction S-5A read as follows:
As to Count IV, if you believe from all of the evidence in this case beyond a reasonable doubt that:
1. on or about December 7, 1994, in the First Judicial District of Jones County, Mississippi, Johnny Pool knowingly and willfully made or used a document marked State's exhibit 7 and referred to as an invoice dated November 15, 1994, which contained a false and fraudulent statement either as to the number of stumps ground on school grounds or the number of trees removed from school grounds, or both; and
2. at the time the defendant did so, he knew that one or both of said statements or entries was false and fraudulent; and
3. any such false statement was material; and
4. the defendant intentionally made or used this document with the intent to defraud the Jones County Board of Education, acting on behalf of the Jones County School District, through its representatives, then you shall find the defendant guilty as charged in count IV.
Should you believe beyond a reasonable doubt that any statement or entry mentioned above was false and fraudulent, you must agree unanimously that such statement was false and fraudulent.

*1048 If the State has failed to prove any of the above elements beyond a reasonable doubt, then you shall find the defendant not guilty of said charge.

Analysis
¶ 22. Pool argues that Jury Instruction S-5A failed to include an element which required the jury to determine whether Pool had been compensated for all stumps ground and trees cut. This element was not an element of the indictment. Pool was charged with seeking payment for work not performed rather than actually receiving compensation for unperformed services. The gravamen of this offense is the attempt to obtain payment. There can be no doubt that Pool submitted the invoice for payment. This Court finds no merit to Pool's argument.

CROSS-APPEAL

I. WHETHER OR NOT THE CIRCUIT COURT COMMITTED REVERSIBLE ERROR WHEN IT SENTENCED POOL TO SERVE ONE YEAR WITHOUT PAROLE, WHEN THE MAXIMUM SENTENCE WAS FIVE YEARS AND THE COURT FOUND THAT POOL WAS AN HABITUAL OFFENDER PURSUANT TO SECTION 99-19-81, MISS. CODE ANN.
¶ 23. The State contends that since Pool was adjudicated an habitual offender by the circuit court, he should have been given a sentence of five years[2] rather than twelve months. Pool responds that no statutory authority exists which allows the State to cross-appeal the circuit judge's failure to sentence a defendant to less than the maximum sentence.

Law
¶ 24. The State's cross-appeal is authorized by Miss.Code Ann. § 99-35-103 (Rev.1994). This statute authorizes appeals by the State:
(a) From a judgment sustaining a demurrer to, or a motion to quash an indictment, or an affidavit charging crime; but such appeals shall not bar or preclude another prosecution of the defendant for the same offense.
(b) From a judgment actually acquitting the defendant where a question of law has been decided adversely to the state or municipality; but in such case the appeal shall not subject the defendant to further prosecution, nor shall the judgment of acquittal be reversed, but the supreme court shall nevertheless decide the question of law presented.
(c) From a ruling adverse to the state or municipality in every case in which the defendant is convicted and prosecutes an appeal; and the case shall be treated as if a cross appeal had been formally prosecuted by the state. All questions of law thus presented shall be decided by the Supreme Court.

Analysis
¶ 25. Pool relies on State v. Lee, 602 So.2d 833, 834 (Miss.1992) to support his contention. A close reading of Lee reveals that Pool is incorrect.
¶ 26. In Lee, the defendant was convicted of burglarizing a church. The trial judge determined that the defendant was an habitual offender and sentenced him to serve a term of twenty-five years, six of those years to be served without parole. The defendant was not sentenced to life imprisonment without parole as required by the habitual offender statute. The State filed a direct appeal from the circuit court judgment and the defendant cross-appealed. The supreme court held that it was without jurisdiction to hear the direct appeal because the State initiated the appeal.
*1049 ¶ 27. The facts in the case sub judice may be distinguished from Lee. Pool prosecuted an appeal from the circuit court judgment. The State cross-appealed. Miss.Code Ann. § 99-35-103(c) authorizes a cross-appeal from a ruling adverse to the State in which the defendant is convicted and prosecutes an appeal. Accordingly, this Court now addresses the State's cross-appeal.
¶ 28. The State contends that, as a matter of Mississippi statutory law, the trial judge lacked discretion to sentence Pool to less than that required by Miss.Code Ann. § 99-19-81. Burt v. State, 493 So.2d 1325, 1330 (Miss.1986). This is an accurate statement; however, constitutional "proportionality review of sentences is required ... in particular situations". Hoops v. State, 681 So.2d 521, 538 (Miss.1996).
¶ 29. The record reflects that the trial judge made the following findings regarding proportionality:
"The State argues that once the determination has been made Mr. Pool is an habitual offender, the court loses discretion to enroll any sentence other than or any sentence less than five years in the State Penitentiary without parole. Clowers v. State, 522 So.2d 762 (Miss.1988) indicates that this may not be such a hard and fast rule, and it relies on Solem vs. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), which tells us we must look at proportionality, the gravity of the offense versus the harshness of the sentence, compare the sentence contemplated with the sentences enrolled against others convicted of the same crime.
I know of no others convicted of this crime. I certainly know of no others who have been adjudicated habitual offenders and then been found guilty of this charge; therefore, I have absolutely no help from that ground. Had Mr. Pool again been convicted of all four counts I cannot say that five years without parole would be unreasonable. Here, however, he was convicted of only one count, and that was the count wherein he never actually received payment on the invoices that he submitted to the school. I understand perfectly that the gravity of the offense is the tendering of the false statements, not the end result of that tender. Still, the fact that the school suffered no actual damages on this count is something the court also considers, and I specifically point out that I am not speaking to the remaining three counts of the indictment.
No jury has convicted Mr. Pool of those counts, so he is presumed innocent. This is an active presumption, not a passive one. Under the circumstances of this count, which is the sole count of the indictment upon which Mr. Pool was convicted, my sense of just sentences tells me that five years without parole is simply harsh. Had Mr. Pool been convicted on all four counts, again, a sentence of five years as an habitual offender on each count to run concurrent would not be unreasonable. That would be a sentence of 60 months without parole. One fourth of 60 months is 15 months. That would not be unreasonable for one count. Considering that no money was actually paid to Mr. Pool on this count is of no consideration to the court, but it was according to the jury, not Mr. Pool's fault that the invoice was not paid. Nevertheless, as a matter of mercy, that should be considered as a factor in his favor.
It is the sentence of the court, Mr. Pool, that on count four and count four only, you'll be sentenced to serve a term of twelve (12) months in the Mississippi State Penitentiary at Parchman under the direction and supervision of the State Department of Corrections. That sentence will be served without parole as you have been adjudicated as an habitual offender."
¶ 30. The trial judge failed to fully articulate his proportionality analysis in accordance with Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) and Hoops v. State. Though he initially relied on Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) to conduct his proportionality review, Harmelin overruled Solem "to the extent that it found a guarantee of proportionality in the Eighth Amendment". Hoops, 681 So.2d at 538.
¶ 31. To ensure proper proportionality analysis, the trial judge must first conduct a *1050 threshold comparison of the crime committed to the sentence to be imposed in order to determine whether an inference of gross disproportionality arises. In the determination of this threshold, the case of Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) may be used as a guide. Hoops, 681 So.2d at 538. Only after gross disproportionality is inferred should the Solem proportionality factors[3] be applied.
¶ 32. Accordingly, this Court reverses the sentence imposed. This matter is remanded for an additional sentencing hearing and proper proportionality analysis.
¶ 33. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT IS REVERSED. THIS MATTER IS HEREBY REMANDED FOR AN ADDITIONAL SENTENCING HEARING AND APPROPRIATE PROPORTIONALITY ANALYSIS. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, PAYNE, AND SOUTHWICK, JJ., CONCUR.
NOTES
[1] When discussing the number of trees cut, the State used the terms "stump" and "tree" interchangeably throughout the trial.
[2] Miss.Code Ann. § 99-19-81 requires that every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation. The maximum term of imprisonment for Pool's present charge is five years.
[3] The Supreme Court in Solem v. Helm, 463 U.S. 277, 290-91, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) listed the following three factors to guide proportionality analysis:

(1) the gravity of the offense and the harshness of the penalty;
(2) comparison of the sentence with sentences imposed on other criminals in the same jurisdiction;
(3) comparison of sentences imposed in other jurisdictions for commission of the same crime with the sentence imposed in this case.