# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01467-COA

KEITH FRISTON A/K/A KEY-MAN A/K/A
KEITH LADELL FRISTON                                         APPELLANT

v.

STATE OF MISSISSIPPI                                           APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/20/2015 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN T. COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 08/08/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., FAIR AND WILSON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Keith Friston appeals his convictions of aggravated driving under the influence and felony leaving the scene of an accident. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On August 17, 2013, Clarksdale police officer Howard Woodward responded to an automobile accident. When he arrived at the scene, Woodward saw a white Oldsmobile Alero against a brick wall, and found Norman Williams and Valerie West on the ground outside of the car. Williams was injured, but conscious and able to walk. However, West

was deceased. Williams identified Friston as the driver of the car. Woodward did not see Friston at the scene of the accident.

¶3. Friston was subsequently located by Clarksdale patrol officer Byron Vaughan not far from the scene of the accident. Friston was placed in Vaughn's vehicle and taken to the hospital.

¶4. Kendrick Walker, an investigator with the Clarksdale Police Department, received permission to obtain blood samples from Friston and Williams. Laboratory analysis showed Friston tested positive for the presence of marijuana and had a blood-alcohol level of .19. Williams tested negative for alcohol, but positive for marijuana. Two days after the accident, Friston gave a statement to Investigator Walker, during which Friston admitted that at the time of the accident, he was driving the car.

¶5. Friston was indicted on Count I, aggravated driving under the influence, and Count II, felony leaving the scene of an accident. The indictment was subsequently amended to charge Friston as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2015).

¶6. This matter initially went to trial in November 2014. However, during trial, Dr. Erin Barnhart, the forensic pathologist who performed West's autopsy, became ill and was unable to testify. The State of Mississippi moved for a mistrial, which was granted over Friston's objection.

¶7. The matter was retried beginning February 17, 2015. At trial, Williams testified that, at the time of the accident, Friston was driving the car, he was in the passenger seat, and

2

West was in the back seat. Williams was unable to state whether Friston had been drinking on the day of the accident.

¶8. Dr. Barnhart identified various autopsy photographs, which showed West's injuries. Dr. Barnhart opined that West's cause of death was blunt force trauma to the head and torso, and that her manner of death was an accident.

¶9. Friston testified in his own defense. Friston stated he and West had been in a relationship since 2007. Friston further stated he had worked for Lew Houston, a contractor, for ten years. Houston typically picked up Friston for work since, according to Friston, "[he] never drives because [he is] always under the influence of alcohol." Although he claimed to never drive, Friston admitted that he purchased the Alero and that it was his car.

¶10. Friston testified that, on the day of the accident, he, Williams, and West went by Houston's house to check on him. Friston stated Williams was driving the car when they left Houston's house. Moreover, Friston stated that at the time of the accident, Williams was driving the car, West was in the passenger seat, and he was sitting in the back on the driver's side. Friston acknowledged that as a result of the impact, Williams was injured and West died, yet he was not injured. Friston further acknowledged that most of the impact from the accident was on the passenger side of the car, with little damage to the driver's side. However, Friston denied that this indicated he was driving at the time of the accident, with Williams on the passenger side.

¶11. Friston admitted that during his statement to the police, he stated he was driving the car at the time of the accident. However, Friston claimed he only said that to cover up for

Williams, as he considers Williams his nephew.

¶12.     Friston stated he left the scene of the accident to get help. However, he admitted that despite "a lot of houses" in the subdivision, he never went to one of the houses for help.

¶13.     Friston attempted to call Houston as a witness during the retrial. Houston had previously testified at Friston's first trial. However, the circuit court excluded Houston's testimony at the retrial.

¶14.     Friston was convicted on both counts and sentenced, as a habitual offender, to twenty-five years in Count I, and twenty years in Count II, to run concurrently, for a total of twenty-five years to serve in the custody of the Mississippi Department of Corrections. He was also ordered to pay a fine in the amount of $5,000. Following the denial of his post-trial motions, Friston appealed.

¶15.     On appeal, Friston argues: (1) the retrial violated his right against double jeopardy since the mistrial was not manifestly necessary, (2) the circuit court erroneously excluded Houston's testimony, and (3) the circuit court failed to instruct the jury on the specific act of negligence and, as a result, constructively amended the indictment.

ANALYSIS

*I.     Double Jeopardy*

¶16.     Friston first argues the circuit court erroneously granted the State's motion for mistrial since a mistrial was not manifestly necessary. As a result, Friston claims the retrial violated his constitutional right against double jeopardy.

¶17.     "[T]he decision to declare a mistrial is within the sound discretion of the trial judge."

*Whitaker v. State*, 114 So. 3d 725, 730 (¶14) (Miss. Ct. App. 2012). "If a mistrial is granted upon the court's motion or upon the State's motion, a second trial is barred because of double jeopardy, unless taking into consideration all the circumstances[,] there was a 'manifest necessity' for the mistrial." *Jenkins v. State*, 759 So. 2d 1229, 1234 (¶18) (Miss. 2000) (citing *Watts v. State*, 492 So. 2d 1281, 1284 (Miss. 1986)). While "a defendant has a valued constitutional right to be tried by a particular jury," that "right is sometimes subordinate to the public interest in allowing the prosecutor one full and fair opportunity to present his case to an impartial jury." *Id.* at 1234-35 (¶¶21-22).

¶18.    Friston asserts the testimony of Dr. Barnhart was unnecessary since the law does not require an autopsy or medical evidence to establish cause of death. Friston contends the State could have had the coroner testify or could have offered into evidence a death certificate. However, "the mere existence of alternatives does not bar a second trial." *Leslie v. State*, 171 So. 3d 549, 552 (¶4) (Miss. Ct. App. 2015). The forensic pathologist who performed the autopsy was the proper witness to identify and authenticate the autopsy photographs, not the coroner. Moreover, there is no indication that the coroner was available to testify on such short notice or was even able to testify as to the cause of death. Additionally, there is no indication that a properly certified copy of the death certificate was available during trial.

¶19.    Taking into consideration all the circumstances, we find there was a manifest necessity for the mistrial. While cause of death is not an element of aggravated driving under the influence, the State must prove a causal connection between the car accident and the

5

victim's death. Therefore, Dr. Barnhart's testimony was necessary to show that West died from blunt force trauma to the head and torso received in the car accident. Accordingly, the circuit court did not abuse its discretion in declaring a mistrial, and Friston's subsequent retrial did not violate his right against double jeopardy.

## II. Exclusion of Houston's Testimony

¶20. Friston next argues the circuit court improperly excluded Houston's testimony, thereby denying him the opportunity to establish a defense. "The standard of review applied to a circuit judge's admission or exclusion of evidence and testimony is abuse of discretion." *Carpenter v. State*, 132 So. 3d 1053, 1055 (¶5) (Miss. Ct. App. 2013).

¶21. During the retrial, defense counsel advised the circuit court that based on a conversation he had with Houston on a break, he anticipated that Houston's testimony would be contrary to his former trial testimony. As a result, defense counsel requested that he be allowed to call Houston as a witness in order to impeach him with his former trial testimony.

¶22. The following exchange between defense counsel and the circuit court occurred:

DEFENSE: — I'm not asking you to make the decision, whether to call [Houston] or not. I am asking the Court to be allowed — although I know it's not customary — to be allowed to call [Houston] and impeach him.

COURT: In front of the jury?

DEFENSE: Yes, sir.

COURT: I don't believe I can.

. . . .

COURT: I don't know that I can — you know, you want to call him for

6

> impeachment purposes, but —
>
> DEFENSE: No, sir.
>
> COURT: — in reality, the impeachment that you want to use, you want the jury to receive as substantive evidence.
>
> DEFENSE: Yes, your Honor.
>
> . . . .
>
> COURT: I don't think I can — I don't believe — under those circumstances, I wouldn't allow you to call Mr. Houston.

¶23. "A criminal defendant is entitled to present his defense to the finder of fact, and it is fundamentally unfair to deny the jury the opportunity to consider the defendant's defense where there is testimony to support the theory." *Clark v. State*, 40 So. 3d 531, 542 (¶30) (Miss. 2010). "However, all evidence admitted in support of the defendant's theory of the case must comport with the Mississippi Rules of Evidence." *Id*.

¶24. Impeachment tests the credibility of a witness. *Lanier v. State*, 533 So. 2d 473, 487 (Miss. 1988). Friston asserts that pursuant to Mississippi Rule of Evidence 607, "[a]ny party, including the party that called the witness, may attack the witness's credibility." Friston claims his attempt to call Houston as a witness was not made in bad faith, but was an attempt to establish his defense, which was supported by Houston's former testimony. *See Carothers v. State*, 152 So. 3d 277, 284 (¶21) (Miss. 2014) ("[T]o prevent abuse of Rule 607, impeachment should not be allowed where the trial court finds the purported purpose of impeachment for offering the statement(s) is in bad faith, or is subterfuge to mask the true purpose of offering the statement(s) to prove the matter asserted.").

7

¶25. However, the record shows Friston did not seek to impeach Houston's credibility with his former testimony. Instead, Friston sought to introduce Houston's former testimony as substantive evidence in support of the central issue of Friston's guilt. While a prior inconsistent statement can be used to impeach the witness's credibility, it is not admissible as substantive evidence of the defendant's guilt. *See Brown v. State*, 556 So. 2d 338, 341 (Miss. 1990) (prior inconsistent sworn statements, which provided substantial support for the central issue of guilt, were not admissible as substantive evidence of guilt).

¶26. It is important to note that the circuit court simply denied Friston's attempt to use Houston's former testimony for substantive purposes. The circuit court did not exclude Houston as a witness on these grounds. Instead, the circuit court found Houston's former testimony for that limited purpose would not be allowed. Overall, we find no abuse of discretion in the exclusion of Houston's testimony.

¶27. Defense counsel next requested to introduce the transcript of Houston's former trial testimony in lieu of calling Houston as a witness. Pursuant to Mississippi Rule of Evidence 804(b)(1), in order for former testimony to be admissible under the hearsay exception, the declarant must be unavailable as a witness. Here, it is undisputed that Houston was available to testify. Thus, the circuit court did not err in excluding Houston's testimony.

### III. Jury Instructions

¶28. Friston last argues the jury was not properly instructed on the elements of aggravated driving under the influence. In particular, Friston argues the jury was not instructed on the specific negligent act that caused West's death, as outlined in Friston's indictment. Friston

8

claims the improper instructions resulted in a constructive amendment to his indictment.

¶29. At the jury-instruction conference, Friston did not object to the State's elements instruction or the State's negligence instruction, which were subsequently marked Jury Instruction C-20 and Jury Instruction C-21 respectively. "[A]n offended party's failure to object to jury instructions at trial procedurally bars the issue on appeal." *Neal v. State*, 15 So. 3d 388, 397 (¶13) (Miss. 2009). As Friston failed to object, he failed to preserve for appellate review his challenge to the instructions. Accordingly, we find this issue is procedurally barred.

¶30. Procedural bar notwithstanding, we find the issue is without merit. "It is well settled that jury instructions generally are within the discretion of the trial court, and the appropriate standard of review is abuse of discretion." *Faust v. State*, 113 So. 3d 614, 616 (¶9) (Miss. Ct. App. 2013) (quoting *Bolton v. State*, 87 So. 3d 1129, 1132 (¶10) (Miss. Ct. App. 2012)). Jury instructions must be read together as a whole. *Wilson v. State*, 967 So. 2d 32, 36 (¶11) (Miss. 2007). When so read, "if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id*. at 36-37 (¶11).

¶31. Count I of the Indictment alleged Friston:

> [D]id unlawfully, willfully and feloniously drive or otherwise operate a motor vehicle . . . while under the influence of an intoxicating liquor, or any other substance, to wit: marijuana, which impaired his ability to operate a motor vehicle, or while having a concentration of [eight] one-hundredths percent of alcohol (.08%) or more in his blood . . . and did, in a negligent manner, cause the death of Valerie West, *by running off the roadway and into a brick wall[.]*

(Emphasis added). Jury Instruction C-20 instructed the jury:

> [I]f you find from the evidence in this case beyond a reasonable doubt . . . that:

1. On or about August 17, 2013, that the Defendant, [Friston], negligently caused a motor vehicle accident resulting in the death of [West], a living human being, when he was driving or operating a motor vehicle, to-wit: a white Oldsmobile Alero, and

2. the Defendant, [Friston], was driving or operating said motor vehicle while under the influence of an intoxicating liquor, or any other substance, to-wit: marijuana, that impaired his ability to operate his motor vehicle, or

3. the Defendant, [Friston], was driving or operating said motor vehicle while having a blood concentration level of eight one-hundredths percent of alcohol (.08%) or more, then you should find the defendant guilty of DUI Death in Count One.

¶32. Friston argues that in order to convict him of aggravated driving under the influence, the State "had to prove that [he] drove while under the influence . . . and that he caused West's death [by running off the roadway and into a brick wall]." Friston claims the circuit court "failed to instruct the jury on the specific negligence the jury should find before convicting Friston of the crime." As a result, Friston argues the circuit court constructively amended his indictment "by omitting the specific act of negligence." We disagree.

¶33. "[N]ot all variances between the indictment and instructions constitute a constructive amendment." *Graham v. State*, 185 So. 3d 992, 1001 (¶25) (Miss. 2016). "The central question [we] must ask when reviewing an alleged constructive amendment is whether the variance is such as to substantially alter the elements of proof necessary for a conviction." *Id*.

¶34. "The elements of DUI homicide are (1) operating a vehicle while under the influence of an intoxicating liquor, or operating a vehicle with [.08%] or more by weight volume of alcohol in the person's blood; and (2) causing the death of another in a negligent manner."

*Andino v. State*, 125 So. 3d 700, 703 (¶8) (Miss. Ct. App. 2013); *see also* Miss. Code Ann. § 63-11-30(1), (5) (Rev. 2013). The State is not required to prove a specific act of negligence, only that the death was caused in a negligent manner. Thus, contrary to Friston's claim, the jury was not required to be instructed on a specific negligent act, i.e., running off the roadway and into a brick wall, in order to convict him of the charge. Instruction C-20 simply removed language that was unnecessary to prove.

¶35. Additionally, Instruction C-20 did not materially alter Friston's defense. Friston claims he was not driving the car at the time of the accident. Whether Friston was negligent by running off the roadway and into a brick wall does not affect this defense. Accordingly, the removal of such language was immaterial.

¶36. We find the jury was properly instructed on the elements of aggravated driving under the influence. Instruction C-20 did not constructively amend Friston's indictment, as the instruction did not substantially alter the elements of proof necessary for a conviction, and did not materially alter his defense.

¶37. **AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**